**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CENGAGE LEARNING, INC.; MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC; and PEARSON EDUCATION, INC.,

Plaintiffs,

v.

RAZAN ALZOUBI; RAZAN ZOHEIR ALZOUBI; RAZAN ZOHEIR AL-ZOUBI; R. GHRIRI; RAZAN GHRIRI; RAZAN Z. GHRIRI; RAZAN ZOHEIR GHRIRI; M. OORAABI; RAZAN ZOUBI; d/b/a ANNE2009; APPLETEXTBOOKS; TARAZANIQ BOOKS; TTBOOKS99; USEDITIONTEXTBOOK; and DOES 1-10.

Case No. 14-cv-2326 (JPO)

**COMPLAINT FOR:**

1. **COPYRIGHT INFRINGEMENT (17 U.S.C. , § 101, *et seq.*)**
2. **COPYRIGHT INFRINGEMENT (17 U.S.C. § 602)**
3. **TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**
4. **TRADEMARK COUNTERFEITING (15 U.S.C. § 1114)**
5. **ILLEGAL IMPORTATION OF GOODS (15 U.S.C. § 1124 and 19 U.S.C. § 1526)**
6. **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

**DEMAND FOR JURY TRIAL**

Plaintiffs Cengage Learning, Inc., McGraw-Hill Global Education Holdings, LLC, and Pearson Education, Inc. (collectively, "Plaintiffs"), for their Complaint against Razan Alzoubi and all of her aliases and d/b/a entities, known and unknown, (collectively, "Defendants") allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as follows:

## INTRODUCTION

1. Plaintiffs are among the world's leading educational publishers. They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

2. Defendants are engaged in the business of textbook arbitrage. They purchase textbooks at the lowest possible prices at which they can find them, and then sell them at a profit to distributors, students, and consumers. In order to maximize their profit, Defendants often buy books from unknown sources at below market prices. Frequently, these sources are overseas sources or unknown Internet sellers.

3. In the course of their book arbitrage, Defendants purchase counterfeit books, which they then sell to others as legitimate textbooks. From time to time, Defendants have been put on notice that books they are selling are counterfeit.

4. Even after they have been told that certain books they have purchased are counterfeit, they have sold them to consumers and distributors as though they are legitimate.

5. Plaintiffs bring this Complaint for damages and injunctive relief to bring to an end and to seek redress for Defendants' infringement of Plaintiffs' intellectual property rights.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, based on federal question jurisdiction.

7. This is an action arising under the Lanham Act §§ 32, 42-43, 15 U.S.C. §§ 1114, 1124-1125, the Copyright Act, 17 U.S.C. § 101 *et al.*, and 19 U.S.C. § 1526.

8. Personal jurisdiction in this district is proper because Defendants, without the consent or permission of Plaintiffs, distributed and offered to distribute over the Internet,

unauthorized copies of Plaintiffs' copyrighted works bearing Plaintiffs' trademarks, for which Plaintiffs have the exclusive rights. Such unlawful conduct occurred in several jurisdictions in the United States, including this one, as Defendants have made sales into this District.

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 28 U.S.C. § 1400(a).

**PARTIES**

10. Plaintiff Cengage Learning, Inc., formerly Thompson Learning, Inc. ("Cengage"), is a Delaware corporation with its principal place of business at 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902.

11. Plaintiff McGraw-Hill Global Education Holdings, LLC ("McGraw-Hill" and formerly The McGraw-Hill Companies, Inc.), is a Delaware limited liability company with its principal place of business at 2 Penn Plaza, 12th Floor, New York, New York 10121.

12. Plaintiff Pearson Education, Inc. ("Pearson"), is a Delaware corporation with its principal place of business at One Lake Street, Upper Saddle River, New Jersey 07458.

13. Defendant Razan Alzoubi, also known as a host of aliases and d/b/a identities, including but not limited to, M. Ooraabi, Razan Ghriri, and Razan Zoubi ("Alzoubi"), is an individual believed to reside at, and to conduct business from, 160 Algonquin Avenue, Holland, Michigan 49424.

14. The true names and capacities of the Defendant Does 1 through 10 (collectively "Doe Defendants") are unknown to Plaintiffs at this time. Each Defendant is known to Plaintiffs only by: (a) various usernames utilized on e-commerce websites, including but not limited to, Alibris.com ("Alibris"), Amazon.com ("Amazon"), Biblio.com ("Biblio"), and TextbooksRUs.com ("TRU"); and/or (b) various email accounts utilized by Defendants,

including but not limited to various Gmail, Hotmail, and Excite accounts. Plaintiffs believe that information obtained in discovery will lead to the identification of Defendants' true names and permit Plaintiffs to amend this Complaint to state the same.

## GENERAL ALLEGATIONS

15. Cengage is among the world's largest providers of tailored learning solutions. In the academic marketplace, Cengage serves secondary, post-secondary, and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments. Cengage's products and services are sold throughout the world, through direct channels and via a worldwide network of distributors. Cengage invests significant resources annually in the worldwide advertisement and promotion of its goods and services under all its marks.

16. McGraw-Hill is a global publisher and lifelong learning partner to students and teachers of all kinds and addresses virtually every aspect of the education market from pre-kindergarten through professional learning, using traditional materials, online learning and multimedia tools. McGraw-Hill is also a leading provider of reference and trade publishing for the medical, business, engineering, and other professions.

17. Pearson is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage. With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Pearson provides quality content, assessment tools, and educational services in all available media.

18. Plaintiffs' publications include physical and digital textbooks, as well as online publications (collectively, "Textbooks"). These Textbooks are widely available in the marketplace for sale, rental, or subscription, including from physical and online bookstores.

19. Plaintiffs invest heavily in Textbook publishing. Each year they incur substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of their editorial offices.

20. The revenue from Plaintiffs' sales and rentals of Textbooks represents a substantial portion of Plaintiffs' respective annual revenues, and is therefore important to their financial health.

21. Plaintiffs suffer serious financial injury when their copyrights and trademarks are infringed. A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publication of one or more deserving Textbooks. This would have an adverse impact on the creation of new Textbooks, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving Textbooks.

22. Both publishers and authors alike are deprived of income when their Textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

## **PLAINTIFFS' FEDERALLY REGISTERED COPYRIGHTS AND TRADEMARKS**

### **A. Plaintiffs' Respective Copyright Registrations**

23. Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, inter alia, those works or derivative works described on Exhibit A

(hereinafter, "Plaintiffs' Authentic Works"). Cengage, McGraw-Hill, and Pearson, or their affiliates, have each duly registered their respective copyrights in Plaintiffs' Authentic Works.

**B. Plaintiffs' Respective Trademark Registrations**

24. Plaintiffs' Authentic Works bear trademarks and service marks as set forth on Exhibit B (hereinafter, "Plaintiffs' Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Registrar of the United States Patent and Trademark Office. Plaintiffs own or are the exclusive licensee of Plaintiffs' Marks. Plaintiffs' Marks are distinctive and arbitrary and are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with their Marks.

**COUNTERFEIT COPIES OF PLAINTIFFS' PUBLICATIONS**

25. Defendants are buyers, importers, and sellers of college textbooks to wholesale distributors as well as to individuals. Defendants purchase large quantities of textbooks from overseas sources, including but not limited to a source in Jordan, import them into the United States, and then sell these textbooks to students, consumers, and wholesalers through a variety of seller identities on various online marketplaces.

26. Beginning on a date unknown, but at least as early as August 2013 and continuing to the present, Defendants have imported and distributed counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks (hereinafter, "Pirated Books").

27. At the time that Defendants imported and sold the Pirated Books, Defendants knew or should have known that the Pirated Works were infringing.

28. On August 28, 2013, U.S. Customs and Border Protection ("CBP") seized 599 counterfeit copies of Plaintiff Pearson's Authentic Work, listed on Exhibit A, at the port in

Grand Rapids, Michigan. CBP informed Pearson that the Al Qatfa Trading Company in Jordan was shipping the books to Defendant, Ms. Razan Alzoubi, at 160 Algonquin Avenue, Holland, Michigan 49424. CBP provided samples for Pearson to inspect, and in the fall of 2013, Pearson confirmed that the books were indeed counterfeit.

29. Defendants imported and distributed the Pirated Books, as though they were legitimate, to United States wholesalers, including but not limited to Follett Higher Education Group ("Follett") and Sterling Educational Media, Inc. ("Sterling"). Defendants imported and sold Pirated Books for the purpose of distributing them to wholesalers who would further distribute them throughout the United States. Through various online marketplaces, Defendants also sell Pirated Books to students and other individuals as well.

30. Defendants knowingly supervised and controlled the importation and distribution of the Pirated Books, and had a direct financial interest in, and stood to gain a direct financial benefit from their deliberately infringing activity.

31. By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants also personally induced, caused, and materially contributed to infringing conduct by others, including the wholesalers to whom they sold the Pirated Works. The wholesalers further distributed the Pirated Works.

32. Defendants did more than supply the means to facilitate the infringement of Plaintiffs' intellectual property rights. They also substantially participated in, and orchestrated, such infringing activities.

33. Defendants conspired and acted in concert with others to accomplish their scheme to commit the above acts, which they knew would violate Plaintiffs' intellectual property rights, including their copyrights and trademark rights in the Plaintiffs' respective Authentic Works.

34. Upon information and belief, Defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of Plaintiffs' intellectual property rights, which they orchestrated.

35. The Pirated Books are inferior to Plaintiffs' Authentic Works. Among other differences, the binding, glue, paper, color and printing are often different and inferior. Based on the use of Plaintiffs' trademarks, actual and prospective purchasers are likely to believe that the Pirated Books are Plaintiffs' authentic publications. Because the Pirated Books are inferior, this weakens, blurs, and tarnishes Plaintiffs' respective trademarks. It further injures Plaintiffs' business reputations by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

36. In the spring of 2013, Sterling notified the Publishers that it had purchased Pirated Books, including copies of a McGraw-Hill Authentic Work listed on Exhibit A. Alibris had facilitated the sales of the Pirated Books to Sterling from several of its marketplace sellers in January 2013. In October 2013, Alibris notified Plaintiffs that the pirated copies of the McGraw-Hill Authentic Work, listed on Exhibit A, were sourced from Defendants' Alibris marketplace seller ID ANNE2009, with the business name USeditiontextbooks. Upon inspection of those books, Plaintiffs confirmed that they were indeed counterfeit.

37. As a result of the Sterling incident, Defendants were put on notice that they were selling counterfeit books when Alibris placed Defendants' inventory on hold on May 3, 2013 and then completely deactivated it on September 30, 2013.

38. In November 2013, Plaintiffs also put Defendants on notice of their infringement. Plaintiffs sought from Defendants information regarding the source of the Pirated Books they

had distributed. Plaintiffs sought this information in order to halt further sales from that source. Defendants, however, never provided such information, thereby allowing the counterfeit source to continue to sell infringing books to others.

39. At the same time that Plaintiffs sought information regarding the source of the Pirated Books, Plaintiffs similarly sought information relating to other titles of books Defendants had purchased from the same source. Plaintiffs sought this in order to take action to halt further sales of those unknown titles. Defendants, however, refused to provide such information, thereby exacerbating the infringement of Plaintiffs' works.

40. In February 2014, Follett notified Plaintiff Cengage that it had purchased 63 counterfeit copies of a Cengage Authentic Work, listed on Exhibit A, from Defendants' Tarazaniq Books storefront on Alibris. Follett shipped the books to Cengage and upon inspection of those books, Cengage determined that they were in fact counterfeit.

41. In February 2014, Follett also notified Plaintiff Cengage that it had purchased 56 counterfeit copies of that same Authentic Work, listed on Exhibit A, from Carl Kahn. Carl Kahn identified Defendants' Apple Textbooks storefront on Amazon as his source for those books. Follett shipped the books to Cengage, and upon inspection of the books, Cengage determined that they were indeed counterfeit.

42. While Plaintiffs have identified some of Defendants' acts of infringement, Defendants' conduct likely went well beyond that which has been identified.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.*

43. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 42 as though fully set forth herein.

44. Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they have been duly registered by Plaintiffs with the United States Copyright Office and published by Plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

45. At all relevant times, Plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

46. Beginning on an unknown date, but at least since August 2013 and continuing to the present, Defendants with knowledge of Plaintiffs' duly registered copyrights in the Authentic Works, infringed Plaintiffs' copyrights. Specifically, Defendants infringed Plaintiffs' exclusive rights to reproduce and distribute to the public by sale or other transfer of ownership the copyrighted Authentic Works by, among other things, importing, distributing, and selling the Pirated Books for profit, without the permission, license, or consent of Plaintiffs.

47. As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

48. Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

49. Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless Defendants are restrained by this Court from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

**SECOND CLAIM FOR RELIEF**

**Copyright Infringement Under 17 U.S.C. § 602**

50. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and have been duly registered by Plaintiffs and/or their affiliates or predecessors-in-interest with the United States Copyright Office and published by Plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

52. At all relevant times, Plaintiffs and/or their affiliates or predecessors-in-interest have been and still are the owners of all rights, title, and interest in and to their respective copyrights in the Authentic Works, which have never been assigned, licensed or otherwise transferred to any of the Defendants, nor have such rights been assigned, licensed or otherwise transferred to Defendants, nor have such rights in the Authentic Works been dedicated to the public. Plaintiffs have all rights necessary to sue to enforce Plaintiffs' Authentic Works.

53. Upon information and belief, on a date to be determined at trial, Defendants deliberately sought out what they knew to be a source, or sources, of illegal and counterfeit copies of Plaintiffs' products, including the Authentic Works, with the intention of purchasing such counterfeit copies, importing such copies into the United States, and selling those copies through various mediums to an unknown number of actual and potential customers in the United States, all without Plaintiffs' permission or knowledge.

54. The sources of the Pirated Books that Defendants intentionally purchased and imported for infringing distribution and sale, including but not limited to Al Qafta Trading Company in Jordan, are not licensed manufacturers, distributors, or licensees of any of the

Plaintiffs. Upon information and belief, Defendants knew the remaining Doe defendants are not authorized manufacturers, distributors, or licensees of Plaintiffs.

55. Upon information and belief, Defendants imported infringing and counterfeit copies of Plaintiffs' Authentic Works which were printed outside of the United States, from Jordan and possibly elsewhere, into the United States with the intention and purpose of distributing and selling such counterfeit copies in the United States and elsewhere, in violation of Plaintiffs' exclusive rights to import and distribute their works pursuant to 17 U.S.C. § 602.

56. Upon information and belief, beginning on an unknown date but at least since August 2013 and continuing through the present, Defendants, with knowledge of Plaintiffs' respective ownership of the Authentic Works, and with knowledge of Plaintiffs' duly registered copyrights in the Authentic Works, have infringed Plaintiffs' import rights by, among other things, deliberately purchasing, importing, distributing, and reselling the Pirated Books for profit, without the permission, license, or consent of Plaintiffs.

57. As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

58. Upon information and belief, Defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious, and willful.

59. By virtue of Defendants' infringing acts, Plaintiffs are entitled to recover Plaintiffs' actual damages plus Defendants' profits, Plaintiffs' costs of suit and attorneys' fees, and all other relief permitted under the Copyright Act. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiffs and will be established according to proof at trial.

60. Defendants' actions described above have cause and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless Defendants are restrained by this Court from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## THIRD CLAIM FOR RELIEF

### Infringement of Federally-Registered Trademarks Under 15 U.S.C. § 1114

61. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 60 as though fully set forth herein.

62. This claim, arising under Section 32 of the Lanham Act [15 U.S.C. § 1114], is for infringement of trademarks registered to Plaintiffs in the United States Patent and Trademark Office.

63. Without Plaintiffs' authorization, Defendants are importing, marketing, offering for sale, and selling in commerce Pirated Books under Plaintiffs' Marks.

64. Defendants' aforesaid uses of Plaintiffs' Marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants' goods, in that the public, and others, are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.

65. Plaintiffs are informed and believe, and on that basis allege, that Defendants will continue to use Plaintiffs' Marks unless enjoined.

66. Defendants, by their above-enumerated acts, willfully and knowingly have violated and infringed Plaintiffs' rights in and to the federally-registered Marks, in violation of

Section 32 of the Lanham Act (15 U.S.C. § 1114), and Defendants threaten to further violate and infringe Plaintiffs' said rights.

67. Plaintiffs are entitled to an order restraining and permanently enjoining Defendants from further use of Plaintiffs' Marks under 15 U.S.C. §§ 1116(a).

68. Defendants' aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

## <u>FOURTH CLAIM FOR RELIEF</u>

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

69. Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 68 as though fully set forth herein.

70. Defendants are infringing the federally registered Plaintiffs' Marks through their use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the importation, sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

71. Defendants are intentionally using Plaintiffs' Marks on unauthorized product. Defendants are intentionally infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

72. The counterfeiting by Defendants of Plaintiffs' Marks has caused and will continue to cause irreparable injury to the reputation and goodwill of Plaintiffs for which Plaintiffs have no adequate remedy at law. Unless Defendants are restrained by this Court from continuing their counterfeiting activities, these injuries will continue to occur in the future.

Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further counterfeiting.

**FIFTH CLAIM FOR RELIEF**

**Illegal Importation of Goods Bearing Infringing United States Trademarks or Names Under 15 U.S.C. § 1124 and 19 U.S.C. § 1526**

73. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 72 as though fully set forth herein.

74. Defendants have knowingly imported counterfeit copies of Plaintiffs' Authentic Works, which imitate the name of Plaintiffs' manufacturer and copy Plaintiffs' Authentic Works, including their trademarks, which are registered with the United States Copyright Office and the United States Patent and Trademark Office respectively.

75. By importing counterfeit copies of Plaintiffs' Authentic Works, Defendants have willingly used counterfeit trademarks which cause confusion as to the origin, sponsorship, and/or approval of the Pirated Books, and which are calculated to induce the public to believe that the Pirated Books were authentically manufactured.

76. Plaintiffs manufacture some of their Authentic Works in the United States. On information and belief, Defendants are importing counterfeit copies of said Authentic Works claiming the Pirated Books were authentically manufactured in the United States when in fact they were manufactured overseas.

**SIXTH CLAIM FOR RELIEF**

**Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(a)**

77. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 76 as though fully set forth herein.

78. Defendants' acts and conduct constitute a false designation of origin, and are likely to cause confusion or mistake, or deceive as to affiliation, connection, or association of Defendants with Plaintiffs, and as to origin, sponsorship, and/or approval of such products by Plaintiffs.

79. Defendants' use in commerce of Plaintiffs' Marks, on or in connection with their products, constitutes a false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80. Defendants' unauthorized use of Plaintiffs' Marks on or in connection with their business and/or its products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs. Plaintiffs are informed and believe, and on that basis allege, that Defendants willfully used and continue to use Plaintiffs' Marks with the intent to confuse, mislead, or deceive consumers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of the products, and with the intent to trade on the reputation and goodwill of Plaintiffs' Marks that were acquired by each of the respective Plaintiffs.

81. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Plaintiffs' Marks. Unless Defendants are restrained from further infringement of Plaintiffs' Marks, Plaintiffs will continue to be irreparably harmed.

82. Defendants' acts of unfair competition, false designation, description and representation are causing Plaintiffs irreparable injury. Defendants continue to commit such acts, and unless restrained and enjoined, will continue to do so, to Plaintiffs' irreparable injury. Plaintiffs' remedy at law is inadequate to compensate them for injuries inflicted and threatened by Defendants.

83. Because of Defendants' conduct in violation of Section 43(a) of the Lanham Act, Plaintiffs are being injured and damaged, and are entitled to recover damages, Defendants' profits, and costs under 15 U.S.C. § 1117(a).

84. Defendants used and are continuing to use Plaintiffs' Marks with full knowledge of Plaintiffs' rights, and in bad faith with willful and deliberate intent to trade on the substantial recognition, reputation, and goodwill of Plaintiffs' Marks. In view of the willful nature of Defendants' infringement and unfair competition, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**PRAYER FOR RELIEF**

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1. Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2. An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Pirated Books with documents relating to all of the purchases and sales;

3. That Defendants be required to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

4. An order enjoining Defendants from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

5. An order enjoining Defendants from further infringing upon Plaintiffs' respective trademarks;

6. That Defendants be required to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

7. That Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations or reproductions, including confusingly similar variations of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

8. That Defendants be required to pay actual damages and profits or statutory damages, at Plaintiffs' election, pursuant to 18 U.S.C. § 2318;

9. An order enjoining Defendants from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

10. An order preventing the further unfairly competitive acts by Defendants;

11. For prejudgment interest at the applicable rate;

12. Punitive damages;

13. For attorneys' fees, costs, and costs of suit; and

14. For such other and further relief the Court deems proper.

DATED: April 2, 2014

Respectfully submitted,

By: ______________________

Matthew J. Oppenheim
Julie C. Chen
Oppenheim + Zebrak, LLP
4400 Jenifer Street NW, Suite 250
Washington, DC 20015
(202) 621-9027
matt@oandzlaw.com
julie@oandzlaw.com

*Counsel for Plaintiffs Cengage Learning, Inc., McGraw-Hill Global Education Holdings, LLC, and Pearson Education, Inc.*